# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**TRUSTEE BETH ANN SCHARRER,**
**as Chapter 7 Trustee for the Bankruptcy**
**Estate of Fundamental Long Term Care,**
**Inc., et al.,**

      **Plaintiffs,**

**v.**                       **Case No.  8:12-cv-1855-T-30MAP**

**FUNDAMENTAL ADMINISTRATIVE**
**SERVICES, LLC, et al.,**

      **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon the Motion of Defendant, Christine Zack, to Dismiss Complaint (Dkt. 23), the Motion to Dismiss on Behalf of Defendant Fundamental Administrative Services, LLC (Dkt. 24), the Motion to Dismiss by Defendant Kristi Anderson (Dkt. 27), and Plaintiffs' Memorandum in Opposition To Defendants' Motions to Dismiss (Dkt. 34).[1] The Court, having reviewed the motions, response, and being otherwise advised of the premises, concludes that the motions to dismiss should be granted.

---

[1]The Court's order of November 21, 2012 (Dkt. 43) granted the three motions to dismiss and stated a written order detailing the reasons for the Court's decision would follow shortly.  The motion to compel jurisdictional depositions (Dkt. 33), the two motions for protective orders (Dkt. 38, 41), and the motion to file a reply (Dkt. 42) remain denied as moot pursuant to the Court's order of November 21, 2012 (Dkt. 43).

# BACKGROUND[2]

This case originated in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida, and it is based on a single count of the private right of action for the unauthorized practice of law.  The Plaintiffs, Beth Ann Scharrer, as Chapter 7 Trustee for the estate of Fundamental Long Term Care, Inc. ("FLTCI"), and Trans Health Management, Inc. ("THMI"), the wholly owned subsidiary of FLTCI, allege that the Defendants, Fundamental Administrative Services, LLC ("FAS"), Christine Zack, and Kristi Anderson wrongfully controlled and directed THMI's defense of a wrongful death action by instructing the withdrawal of THMI's local counsel of record which resulted in a default judgment.

The background facts leading to the current lawsuit are quite convoluted and unclear from the complaint.  On December 5, 2011, the Estate of Juanita Amelia Jackson filed an involuntary petition against FLTCI based on a state court judgment for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida.  On January 12, 2012, the bankruptcy court entered an order for relief as a result of FLTCI's failure to file a motion or responsive pleading.  Thereafter, Scharrer was appointed as Chapter 7 Trustee for the bankruptcy estate of FLTCI.

In 2004, THMI and Trans Healthcare, Inc. ("THI") operated, managed, and owned nursing homes and other healthcare facilities in Florida, and THI owned all the issued and outstanding capital stock of THMI.  Around February 28, 2006, THI sold all of its stock in

---

[2]For purposes of a motion to dismiss, this Court is required to accept the allegations of the complaint as true.  Therefore, the factual background is taken from those allegations.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

THMI to FLTCI, the current Chapter 7 Debtor in Bankruptcy.  THMI is currently a wholly owned subsidiary of FLTCI.

FAS is a Delaware limited liability company with its principal place of business in Sparks, Maryland where it provides administrative back office support services to long-term care companies, providers, skilled nursing facilities, long-term acute care hospitals, outpatient therapy care clinics, and hospices.  Zack and Anderson are attorneys employed by FAS and not licensed to practice law in Florida.  FAS entered into an administrative services agreement with one of THI's subsidiaries in 2006, agreeing to provide administrative services to THI and related companies.

On July 30, 2004, the Estate of Juanita Amelia Jackson filed a complaint for negligence and wrongful death against both THMI and THI in Florida state court.  After selling THMI in 2006 to FLTCI, THI continued to provide for THMI's defense in certain lawsuits, including the *Jackson* litigation.  Per its administrative services agreement, FAS coordinated with Florida law firms that represented THI and THMI in the *Jackson* litigation.  According to the complaint, the Defendants "directed counsel for THMI and THI - Quintairos, Prieto, Wood & Boyer, P.A. - to withdraw as counsel for both THMI and THI, and cease any defense against the Jackson Estate's claim."  Additionally, the complaint alleges that Defendants made "strategic decisions," "directed and controlled the defense," "advised, counseled, provided legal advice," and "unlawfully controlled and/or directed THMI's defense and represented themselves as counsel for THMI and FLTC[I]."

On July 7, 2010, the state court entered a default against THMI and THI for failure to plead or otherwise defend, and the default was served on Anderson as the designated contact person.  The case proceeded to trial on the damages issue without counsel appearing on behalf of either THI or THMI, resulting in a jury finding them jointly liable for negligence and wrongful death in the amounts of $10 million in compensatory damages and $100 million in punitive damages.  On July 22, 2010, the state court entered a final judgment against THMI in the amount of $55 million and against THI in the amount of $55 million.

On May 23, 2011, the state court granted the Jackson Estate's motion to implead new defendants, including FLTCI and FAS.  The complaint alleges that FAS responded on its own behalf, but failed to arrange for a response on behalf of its client, FLTCI.  On July 11, 2011, as a result of FLTCI's failure to make an appearance or respond, the court entered an order granting a default against FLTCI.  Finally, on September 13, 2011, the Florida state court entered an amended final judgment against FLTCI in the amount of $110 million.

On February 23, 2012, the bankruptcy court entered an order to show cause which required all parties in possession of any records of FLTCI to produce copies of such records to Scharrer, the Trustee.  The complaint alleges that the Defendants threatened a lawsuit against the Quintairos Firm for any damages that may arise from disclosure of documents held by the Quintairos Firm that FAS alleged to be attorney-client privileged.

On July 20, 2012, Scharrer and THMI filed a complaint in the Circuit Court of Polk County, Florida asserting claims for restitution, compensatory and consequential damages, and unjust enrichment arising from Defendants' alleged unauthorized practice of law.

Defendants removed the action pursuant to this Court's diversity jurisdiction under 28 U.S.C.

§ 1332(a).  All three Defendants moved to dismiss the complaint based on a lack of standing,

lack of ripeness, lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and failure to

state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

### I.    Standing

Standing "is the threshold question in every federal case, determining the power of

the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  In order to

demonstrate Article III standing, a plaintiff must make three showings:

> First, the plaintiff must have suffered an "injury in fact" - an invasion of a
> legally protected interest which is (a) concrete and particularized, and (b)
> "actual or imminent, not conjectural or hypothetical."  Second, there must be
> a causal connection between the injury and the conduct complained of - the
> injury has to be "fairly . . . traceable to the challenged action of the defendant,
> and not . . . the result of the independent action of some third party not before
> the court.  Third, it must be "likely," as opposed to merely "speculative," that
> the injury will be "redressed by a favorable decision."

*Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005) (citing *Dillard v.*

*Baldwin County Com'rs*, 225 F.3d 1271 (11th Cir. 2000)).  At the pleading stage, plaintiffs

have a relatively low burden to establish causation for standing purposes.  *Goldberg v. UBS*

*AG*, 660 F. Supp. 2d 410, 418 (E.D.N.Y. 2009) (citing *United States v. SCRAP*, 412 U.S.

669, 689 (1973)).

Defendants argue that Scharrer lacks standing to bring an action on behalf of THMI,

a wholly owned subsidiary of FLTCI.  However, the present case was commenced by *both*

Scharrer, in her capacity as Trustee for FLTCI, *and* THMI.  From the pleadings, THMI is bringing this cause of action as a separate plaintiff, not through Scharrer's authority as Trustee of its parent corporation.

Defendants do not argue that Scharrer or THMI lack standing because they have not suffered an injury in fact, failed to show a casual connection between their injuries and the complained of conduct, or failed to show this Court could likely redress their injuries.  Rather, Scharrer and THMI have sufficiently pled all three standing requirements and this Court is not precluded from Article III jurisdiction to hear their complaint based on a lack of standing.

## II.      Ripeness

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).  "Ripeness is peculiarly a question of timing.  Its basic rationale is to prevent courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985).  Under Florida law, "when a plaintiff bases a malpractice action on errors committed in the course of litigation, and the litigation proceeds to judgment, the redressable harm is not established until final judgment is rendered." *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1338 (11th Cir. 2001); *Clemente v. Freshman*, 760 So. 2d 1059, 1061 (Fla. 3d DCA 2000) ("In claims for legal malpractice, Florida law is well-settled that redressable

harm or injury is not established until the underlying legal proceeding giving rise to the malpractice claim has been finalized or completed by appellate review.").

FAS and Zack argue that Scharrer and THMI's claim is not ripe for adjudication because the default judgments in the underlying *Jackson* case "will likely soon be subject to attack in Florida state courts."  However, as it currently stands, the *Jackson* judgments are final judgments that pose a redressable, non-speculative harm.  The only contingency is whether those judgments will be attacked, which has yet to occur.  Thus, the *Jackson* judgments are final adjudications and the claim for the unlicensed practice of law is ripe for adjudication.

## III.    Personal Jurisdiction

### A.     Standard of Review

A federal court sitting in diversity may properly exercise personal jurisdiction over a defendant only if the plaintiff meets the requirements of the state long-arm statute and the Due Process Clause of the Fourteenth Amendment.  *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 (11th Cir. 1999); *Venetian Salami Co. v. Parthenais,* 554 So. 2d 499, 502 (Fla.1989).  Thus, a plaintiff must show defendant's activities and contacts in Florida satisfy Florida's long-arm statute to obtain personal jurisdiction.  "If the plaintiff satisfies this requirement, a defendant who wishes to challenge personal jurisdiction must provide admissible evidence that refutes the essential jurisdictional facts set forth in the plaintiff's complaint."  *Kitroser v. Hurt*, 85 So. 3d 1084, 1087 (Fla. 2012).  "If a defendant fully refutes

the jurisdictional allegations, then the burden shifts back to the plaintiff to prove the basis for jurisdiction." *Id.*

If the Court concludes that personal jurisdiction exists under Florida's long-arm statute, it must next consider whether defendant's contacts with the state of Florida are sufficient to satisfy the Due Process Clause of the Fourteenth Amendment. *Venetian Salami Co.,* 554 So. 2d at 501. The due process inquiry requires the Court to determine whether a defendant has minimum contacts with the forum state and whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295-96 (11th Cir. 2009).

### B.     Florida's Long-Arm Statute

#### 1.     Florida Statute § 48.193(1)(a) Carrying on a Business

Florida Statute § 48.193(1)(a) provides that a defendant, "whether or not a citizen or resident of this state," is subject to the jurisdiction of Florida courts "for any cause of action arising from the doing of any of the following acts: (a) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state."

In order to establish personal jurisdiction over a defendant through the "carrying on a business" prong of the long-arm statute, the plaintiff must show the defendant's activities evince "a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir.

2000)).  The Eleventh Circuit has identified several relevant factors to consider: "the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." *Id.* Additionally, "[t]he Long-Arm provision requires that a defendant conduct business in Florida, and therefore conducting business from a[n] [out-of-state] office *as if* in Florida is insufficient under the plain text of the statute." *Id.* (emphasis in original).

Scharrer and THMI assert in their complaint that the "FAS Defendants are operating, conducting, engaging in, and carrying on business in [Florida]."  However, none of the Defendants have an office in Florida or are registered to do business or licensed to practice in Florida.  Zack and Anderson, in their personal capacities, do not have any clients in Florida, and FAS has only one client in Florida which generates less than one percent of its revenue nationwide.  *See id.* (finding that less than five percent of gross revenue counseled against a finding of engaging in a general course of business).  Therefore, FAS, Zack, and Anderson do not qualify as conducting a business in Florida under the above-enumerated factors.

Furthermore, even if the Defendants' contacts with the state could be characterized as an ongoing business venture, the Eleventh Circuit has clearly stated that the business activity must occur within Florida.  *Id.*  (finding that "[b]ecause [defendant] physically performed all  its work from its California offices, it cannot be argued that [electronic communication and access to files] constituted 'conducting business' in Florida as defined

in Fla. Stat. § 48.193(1)(A)").  At most, FAS, Zack, and Anderson communicated with local counsel for THMI through telephone conversations and emails from Maryland.  Scharrer and THMI do not rebut this assertion or present any evidence to the contrary that the Defendants traveled to Florida or provided their administrative services within the state.  As such, Scharrer and THMI have failed to show that Fla. Stat. § 48.193(1)(a) is satisfied as to FAS, Zack, and Anderson.

### 2.     Florida Statute § 48.193(1)(b) Tortious Act

Florida Statute § 48.193(1)(b) provides that a defendant, "whether or not a citizen or resident of this state," is subject to the jurisdiction of Florida courts for any cause of action arising from "committing a tortious act within this state." Florida courts construing this provision have noted that the alleged tortfeasor's physical presence in Florida is not required. *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002).  Rather, a tortious act "can occur through telephonic, electronic, or written communications into Florida" as long as the cause of action arises from the communications directed into the state.  *Id.*

The Eleventh Circuit has held that "[i]n our technologically sophisticated world permitting interstate business transactions by mail, wire, and satellite signals, physical presence by the nonresident defendant is not necessary for personal jurisdiction in the forum state." *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 857 (11th Cir. 1990) (citing *Burger King,* 471 U.S. at 476). *See generally Brennan v. Roman*

*Catholic Diocese of Syracuse New York,* 2009 WL 941765 (11th Cir. April 9, 2009)[3] (vacating district court's dismissal for lack of personal jurisdiction where plaintiff suffered injury in Florida arising from defendant's alleged intentional misconduct in New York and its fraudulent representations directed to him in Florida); *Horizon Aggressive Growth, L.P.,* 421 F.3d at 1168 (11th Cir. 2005) (reversing district court's dismissal for lack of personal jurisdiction under Florida's long-arm statute where complaint alleged defendant's communications from California to plaintiff in Florida intended to deceive and defraud plaintiff); *Acquardo v. Bergeron,* 851 So. 2d 665, 671 (Fla. 2003) (finding jurisdiction under Fla. Stat. § 48.193(1)(b) where an out-of-state defendant allegedly defamed a Florida resident during a single phone call made into Florida).

However, even if out-of-state communications can support the basis for a tort committed within Florida, the complaint must state a cause of action for which relief can be granted. *See Russo v. Fink*, 87 So. 3d 815, 818-19 (Fla. 4th DCA 2012) (finding that defendant was not within reach of long-arm statute because plaintiff failed to allege sufficient facts in complaint to state cause of action for tortious acts in Florida); *Silver v. Levinson*, 648 So. 2d 240, 241 (Fla. 4th DCA 1995) (stating that "because the threshold question of personal jurisdiction turns on whether defendant committed an intentional tort in Florida, we must also necessarily review the complaint to determine whether it states a cause of action").

---

[3] Unpublished opinions are not binding precedent in the court; however they may be cited as persuasive authority. *See* 11th Cir. R. 36-2.

Accepting the allegations as true, a court must first determine whether a cause of action has properly been pleaded before it can find Florida's tortious act prong of the long-arm statute satisfied.

In 2010, the Florida Supreme Court interpreted Rule 10-7.1(d)(3) of the Rules Regulating the Florida Bar to allow for a private cause of action to be brought for the unlicensed practice of law before the alleged violator has been prosecuted by The Florida Bar or disciplined by the Florida Supreme Court. *Goldberg v. Merrill Lynch Credit Corp.*, 35 So. 3d 905, 907 (Fla. 2010).

> To state a cause of action for damages under any legal theory that arises from the unauthorized practice of law, we hold that the pleading must state that this Court has ruled that the specified conduct at issue constitutes the unauthorized practice of law. Stated another way, a claimant must allege as an essential element of any cause of action premised on the unauthorized practice of law that this Court has ruled the activities are the unauthorized practice of law.

*Id.* (citations omitted).  This element, pleading a prior ruling by the Florida Supreme Court that states the alleged conduct constitutes the unauthorized practice of law, does *not* require that the accused defendant has already been subject to a Florida Bar proceeding. *Id.* at 908. Rather, it eliminates a cause of action premised on conduct that is an issue of first impression before the Florida Supreme Court. *Id.*

The Rule 4-5.5(b) of the Rules Regulating the Florida Bar sets forth the generally prohibited conduct that constitutes the unlicensed practice of law in Florida.  An attorney who is not admitted before the Florida Bar, may not:

> (1) except as authorized by other law, establish an office or other regulatory presence in Florida for the practice of law; or

(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in Florida; or

(3) appear in court, before an administrative agency, or before any other tribunal unless authorized to do so by the court, administrative agency, or tribunal pursuant to the applicable rules of the court, administrative agency, or tribunal.

Rules Regulating the Fla. Bar, § 4-5.5(b); *see also* Fla. Stat. § 454.23 ("Any person not licensed or otherwise authorized to practice law in this state who practices law in this state or holds himself or herself out to the public as qualified to practice law in this state . . . commits a felony of the third degree.").   Besides holding out to the public, all other prohibited activities require action undertaken *in Florida*.

The gravamen of Scharrer and THMI's claim is that the Defendants wrongfully "directed counsel for THMI and THI - Quintairos, Prieto, Wood & Boyer, P.A. - to withdraw as counsel for both THMI and THI, and cease any defense against the Jackson Estate's claim." They also allege in their complaint that the Defendants "unlawfully controlled and/or directed THMI's defense and represented themselves as counsel," "directed the withdrawal of defense for THMI," "provide[d] legal services," "advised, counseled, provided legal advice, and directed local defense counsel," "made strategic decisions regarding the defense strategy on behalf of THMI in Florida litigation and acted as legal representatives of THMI and FLTC[I]," and made "threats to file suit against Florida local counsel, the Quintairos Firm, for any damages that may arise from the disclosure of documents alleged to be attorney-client privileged."   The complaint does not allege that any of the Defendants appeared in court on behalf of THMI or FLTCI, that they established an office in Florida for

the practice of law, or that they held themselves out to be licensed to practice in Florida.

Under a plain reading of the prohibitions listed in Rule 4-5.5(b), the Defendants have not

committed the unauthorized practice of law based on the Rules Regulating the Florida Bar.

Furthermore, even if one of the above conclusory allegations could be twisted to

constitute the unauthorized practice of law, Scharrer and THMI have failed to allege the most

important element of their cause of action:  a prior ruling by the Florida Supreme Court that

this particular conduct, namely directing local Florida counsel to withdraw from

representation, is the unauthorized practice of law.  Three cases are cited in the complaint but

all three fail to support the facts alleged.[4]

In *Florida Bar v. Consolidated Business & Legal Forms, Inc.*, 386 So. 2d 797 (Fla.

1980) (per curiam), the Florida Supreme Court held that a Florida corporation which was

"engaged in the business of offering legal services through members of The Florida Bar who

[we]re its full time employees" was engaged in the unauthorized practice of law because the

officers and stockholders, who were non-lawyers, controlled the corporation and their sole

purpose was personal financial gain.  *Id.* at 798.  The Florida Supreme Court made several

important observations.  First, this corporation "differs from businesses who maintain

lawyers as full time employees primarily to further a course of business other than the

---

[4]Scharrer and THMI introduce for the first time in their response to the motions to dismiss a fourth case, *Florida Bar v. King*, 468 So. 2d 982 (Fla. 1985).  However, this case also does not satisfy the pleading requirements because the respondent went much further than advising clients:  she "drafted the entries of information for the blanks on the forms" and "had direct contact in the nature of consultation, explanation, recommendation, advice and assistance in the provision, selection, and completion of forms."  Scharrer and THMI do not allege that any of the defendants ever drafted anything on THMI's behalf or directly represented them in court or in any filing; rather, they broadly allege defendants "advised, counseled, directed" Florida lawyers but never connect those allegations with any legal filing or appearance on behalf of THMI or FLTCI.

practice of law." *Id.*  Second, the non-lawyer officers controlled the lawyer employees to

such a degree as to encourage "a high volume turnover of clients in order to increase his

income" by "maintaining cost efficiency and profit." *Id.*  Third, if the corporation ceased to

provide legal services, "then it would cease to exist as an income producing enterprise."

The differences between the structure and practice of FAS and Consolidated Business

are glaring.  FAS is not a Florida corporation nor are Zack and Anderson licensed to practice

in Florida.  Unlike Consolidated Business, FAS does not maintain any offices in Florida or

advertise to the public that legal services are available in Florida.  *Id.* at 799.  As the

complaint states, FAS' purpose is to provide a range of "administrative back office support

services to long-term care companies, providers, skilled nursing facilities, long-term acute

care hospitals, outpatient therapy care clinics, and hospices," not legal services.  And FAS

certainly would continue to exist in the absence of the alleged advising and directing of

THMI's defense in the Florida litigation.  Thus, *Consolidated Business* clearly does not set

forth an applicable precedent as to FAS to satisfy the Florida Supreme Court's pleading

requirement to state a cause of action for the unauthorized practice of law.

As to the individual Defendants, Zack and Anderson, the complaint alleges that

*Florida Bar v. Dale*, 496 So. 2d 813 (Fla. 1986), applies.  In *Dale*, the Florida Supreme Court

enjoined a Mississippi attorney from the unauthorized practice of law in Florida because he

"affirmatively represent[ed] that he was able and willing to render legal assistance and

counsel" in Florida to Florida clients.  Specifically, Dale told his client that he would write

the title insurance and act as closing agent in the purchase of property in Pensacola, Florida,

and then proceeded to represent his client in the business negotiations for such property.

Again, *Dale* is markedly different from what the complaint alleges against Zack and Anderson. Nothing in the complaint sets forth facts from which a court could conclude that Zack and Anderson affirmatively represented that they were able and willing to render legal assistance in Florida to Florida clients. Rather, the complaint states they "directed" and "controlled" THMI's defense, but it fails to state how they did that or to whom they communicated these authoritative instructions. Presumably, the direction was given to THMI's local counsel, the Quintairos Firm. But that fact, a communication to a law firm on behalf of their client, is not what the Florida Supreme Court found to be the unauthorized practice of law in *Dale*. In particular, the legal representation in *Dale* was done in Florida on behalf of a Florida client. Here, Zack and Anderson never traveled to Florida nor represented themselves as licensed to practice in Florida and any actions they undertook were done in Maryland on behalf of a Maryland client.

Lastly, Scharrer and THMI identify *Florida Bar v. York*, 689 So. 2d 1037 (Fla. 1996), as a case providing the necessary element to show a previously identified instance of the unauthorized practice of law. In *York*, the Florida Supreme Court found a paralegal's practice of reviewing clients' potential property damage claims, "reviewing reports, reviewing statutes, then writing letters, sending fax memos and serving as a representative to accept responses from those demands," and "offering to accept payments from them" as the unauthorized practice of law. *Id.* at 1039. Additionally, the paralegal's "threats to file suit with or on behalf of his customer/client[s] is the practice of law that he is not licensed to perform." *Id.*

The complaint alleges that "FAS, Zack and/or Anderson made threats to file suit against Florida local counsel, the Quintairos Firm, for any damages that may arise from the disclosure of documents alleged to be attorney-client privileged." The first difference arises in that the complaint does not allege on whose behalf the defendants threatened to sue or in what context they threatened to do so. Surely the Florida Supreme Court did not intend that all threats to sue, even the colloquial epithet, constitute the unlicensed practice of law.

Furthermore, *York* is distinguishable because the paralegal in that case advertised his "assistance" in Florida, represented Florida clients, advised clients of their "rights and entitlements as he perceived them under Florida law," threatened to sue on behalf of these Florida clients based on Florida law, and informed those he believed responsible for his clients' damage that he was the clients' representative. Unlike *York*, the complaint does not allege that FAS, Zack, and Anderson advertised to Florida clients, advised THMI or FLTCI on Florida law, threatened to sue the Quintairos firm on behalf of THMI or FLTIC, or made those threats to sue in Florida courts. Simple statements of an intent to sue, assuming those facts are true, are insufficient to establish the unauthorized practice of law *in Florida* if those statements are made in another state and without the endorsement of being the legal counsel of record for the intended client.

Next, assuming the *York* decision can be bifurcated so that threats alone to sue without the former step of serving as a legal representative of the client are alone the unauthorized practice of law, the alleged threats to sue by FAS, Zack, and Anderson are not related to the alleged harm suffered of "compensatory and consequential damages based on Defendants' unlicensed practice of law." The harm is the judgment entered in 2010 against THMI and

FLTCI in the underlying *Jackson* case. The alleged threats to sue the Quintairos firm did not occur until after the bankruptcy court entered an order to show cause on February 23, 2012. Therefore, any threats made after the final judgment was entered in 2010 cannot logically have caused that harm. Thus, the complaint fails to allege sufficient facts to show causation for the unauthorized practice of law based on threats to sue.

In sum, the complaint fails to allege a prior Florida Supreme Court ruling that identifies the alleged conduct as the unauthorized practice of law, a necessary element to properly plead this cause of action.[5] Thus, Scharrer and THMI fail to show that Fla. Stat. § 48.193(1)(a) is satisfied as to FAS, Zack, and Anderson.

### 3.      Florida Statute § 48.193(2) General Jurisdiction

Florida Statute § 48.193(2) provides that "a defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." "The 'substantial and not isolated activity' requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic requirement for general jurisdiction under the Fourteenth

---

[5]Although not directly parallel, *Florida Bar v. Savitt*, 363 So. 2d 559 (Fla. 1978), approves of non-Florida attorneys engaging in "professional activities that constitute 'coordinating-supervisory' activities in essentially multi-state transactions in which matters of Florida law are being handled by members of The Florida Bar." *Id.* at 560. Moreover, *Savitt* declares that it is *not* the unauthorized practice of law to:

> communicate, consult and deal with the personnel in the Florida office in all respects, including discussion of, and advice upon, legal matters, preparation and review of legal documents, and any other act which may constitute the practice of law, so long as such activities merely constitute assistance to a member of The Florida Bar and, if the result of such activities is utilized, it is the product of, or is merged into the product of, a member of The Florida Bar for which the Florida Bar member takes professional responsibility.

*Id.*

Amendment Due Process Clause. . . ." *Meier ex rel Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 n.5 (11th Cir. 2002).   "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.—, 131 S. Ct. 2846, 2853-54 (2011).

As to FAS, the complaint states it is "a Delaware limited liability company with its principal place of business in Sparks, Maryland."   Scharrer and THMI assert in their response that FAS' provision of back office services rises to the level of substantial and not isolated activity within Florida.   However, as discussed above in relation to the conducting business prong of the Florida long-arm statute, FAS derives less than one percent of its revenue from its single client in Florida, does not have an office in Florida, and provides its services to its Florida client from the state of Maryland.   Thus, it cannot be "fairly regarded as at home" in this forum.

For individuals, "[a] legal residence or 'domicile' is the place where a person has fixed an abode with the present intention of making it his or her permanent home." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1275 n.16 (11th Cir. 2009) (quoting *Snyder v. McLeod*, 971 So. 2d 166, 169 (Fla. 5th DCA 2007).   As to Zack and Anderson, neither are domiciled in Florida.   The complaint acknowledges these facts, albeit incorrectly as to Ms. Zack.[6]   Zack's declaration states she has resided in Nevada since 2007 and plans to reside there on a permanent basis.   She does not have an office in Florida, nor has she ever been licensed to practice in Florida.   Anderson's declaration states she resides in Maryland and

---

[6]"Ms. Zack is a resident of Maryland. . . . Ms. Anderson is a resident of Maryland."

never intends on acquiring a domicile in Florida. She also does not have an office in Florida, nor has she ever been licensed to practice in Florida. Clearly, Florida does not have general jurisdiction over the defendants through Fla. Stat. § 48.193(2).

Because the Court concludes that jurisdiction does not exist under the Florida long-arm statute, the Court need not address whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment. Additionally, since the Court lacks personal jurisdiction over the Defendants, it is barred from addressing the remaining claims related to Fed. R. Civ. P. 12(b)(6). *Posner v. Essex Ins. Co., Ltd.*, 178 F. 3d 1209, 1214 n.6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action. *See Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962) ("It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss."); *see also Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (stating that court should decide a 12(b)(2) motion before a 12(b)(6) motion because "a court without 12(b)(2) jurisdiction lacks power to dismiss a complaint for failure to state a claim").)

It is therefore ORDERED AND ADJUDGED that:

1.     The Motion of Defendant, Christine Zack, to Dismiss Complaint (Dkt. 23), the Motion to Dismiss on Behalf of Defendant Fundamental Administrative Services, LLC (Dkt. 24), and the Motion to Dismiss by Defendant Kristi Anderson (Dkt. 27) are GRANTED.

2.     This case is dismissed without prejudice to Plaintiffs to amend within twenty (20) days from the date of this Order to state a cause of action for the unauthorized practice

of law that would establish personal jurisdiction over the Defendants pursuant to Fla. Stat.

§ 48.193(1)(b).

     3.     If Plaintiffs fail to file an amended complaint within twenty (20) days, this

Court may close this case without further notice.

     **DONE** and **ORDERED** in Tampa, Florida on November 27, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2012\12-cv-1855.mtdismiss.frm