# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**TRUSTEE BETH ANN SCHARRER,**
**as Chapter 7 Trustee for the Bankruptcy**
**Estate of Fundamental Long Term Care,**
**Inc., et al.,**

      **Plaintiffs,**

**v.**                                     **Case No.  8:12-cv-1855-T-30MAP**

**FUNDAMENTAL ADMINISTRATIVE**
**SERVICES, LLC, et al.,**

      **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon the Motion to Dismiss on Behalf of Defendant Fundamental Administrative Services, LLC (Dkt. 49), Motion of Defendant, Christine Zack, to Dismiss Amended Complaint (Dkt. 50), Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss Amended Complaint (Dkt. 59), Defendant Fundamental Administrative Services, LLC's Motion to Strike Portions of Plaintiffs' Opposition (Dkt. 64), Motion of Defendant, Christine Zack, to Strike Portions of Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss Amended Complaint (Dkt. 65), Plaintiffs' Response in Opposition to Defendants' Motions to Strike (Dkt. 70), and Defendants' Amended Joint Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss (Dkt. 69).  The Court, having reviewed the motions, responses, and being otherwise

advised in the premises, concludes the motions to dismiss should be granted and the motions to strike should be denied as moot.

## **BACKGROUND**

Plaintiffs, Beth Ann Scharrer, as Chapter 7 Trustee for the estate of Fundamental Long Term Care, Inc. ("FLTCI"), and Trans Health Management, Inc. ("THMI"), the wholly owned subsidiary of FLTCI, allege in their amended complaint that the Defendants, Fundamental Administrative Services, LLC ("FAS"), Christine Zack, and Kristi Anderson[1] controlled and directed THMI's defense of wrongful death actions by instructing the withdrawal of THMI's local counsel of record, resulting in large default judgments.  FLTCI and THMI allege that this involvement with the wrongful death actions constitutes the tort of the unauthorized practice of law.

Plaintiffs brought the same cause of action premised on the same operative facts in the original complaint, which the Court dismissed for lack of personal jurisdiction.  In the Court's order dismissing the original complaint, the Court held that FLTCI and THMI failed to allege sufficient facts to support either general jurisdiction or specific jurisdiction through the "carrying on a business" or tortious act prongs of the Florida long-arm statute.  Fla. Stat. § 48.193(2) & (1)(a) & (b).  The Court specifically limited FLTCI and THMI's right to amend to establish personal jurisdiction by alleging a valid cause of action for the

---

[1]Plaintiffs voluntarily dismissed with prejudice all claims against Defendant Kristi Anderson. *See* Dkt. 71 & 72.  Therefore, the Court will not address her motion to dismiss and motion to strike.

unauthorized practice of law.[2]   The Court granted leave to amend to establish personal jurisdiction through Fla. Stat. § 48.193(1)(b), not through Fla. Stat. § 48.193(1)(a) & (2). Accordingly, the Court will not revisit those issues which it has already analyzed, particularly because the amended complaint also fails for the same reasons to sufficiently allege facts supporting either general jurisdiction or that Defendants were "carrying on a business" in Florida.[3]

In order to satisfy the tortious prong of the Florida long-arm statute, Plaintiffs have included a host of allegations in their amended complaint in an attempt to allege a cause of action based on the unauthorized practice of law.[4]   The gravamen of Plaintiffs' claim remains that Defendants made "[t]he strategic decision and defense strategy to cease all defense of the Nursing Home Cases."  Dkt. 46, Am. Compl. ¶ 49.  Although Plaintiffs admit that local Florida counsel, the law firm of Quintairos, Prieto, Wood & Boyer, P.A. ("Quintairos Firm") appeared in court on behalf of THI and THMI, Plaintiffs allege that "[t]he extent of the Defendants' control over the services provided by local Florida counsel rendered the

---

[2]"This case is dismissed without prejudice to Plaintiffs to amend within twenty (20) days from the date of this Order to state a cause of action for the unauthorized practice of law that would establish personal jurisdiction over the Defendants pursuant to Fla. Stat. § 48.193(1)(b)."  Dkt. 44.

[3]Plaintiffs attempt to avert this conclusion by discussing a group of Samaritan Care entities that conduct business in Florida in their response to the motions to dismiss, which they allege are the alter-egos and predecessors to FAS.  Even if that were true and properly alleged in the complaint (instead of raised in their response), those entities were dissolved in 2008.

[4]Many of these allegations are completely irrelevant to the default judgments entered in the wrongful death actions.  Accordingly, they cannot serve as the basis of establishing personal jurisdiction through the tortious prong of the Florida long-arm statute because the facts establishing the cause of action must also give rise to personal jurisdiction.  Fla. Stat. § 48.193(1).

Defendants the actual providers of the legal services on behalf of THMI in Florida, regardless of the lack of official appearance in the Nursing Home Cases." Dkt. 46, Am. Compl. ¶ 77. Thus, Plaintiffs' alleged tort of the unauthorized practice of law is based on the theory of undue influence over local counsel of record so that the Defendants' actions can be considered the practice of law.

To establish this novel theory, Plaintiffs alleged the following allegations, many of which mirror allegations made in the original complaint:

> As part of its control and direction of THMI's defense, Zack and Anderson, on behalf of FAS, communicated with opposing parties as the purported representatives of THI and THMI, served as contact for conferences on legal disputes, argued and advocated the merits of the Nursing Home Cases, evidentiary issues, and discovery matters. The Defendants, through their control and direction of THMI's defense, have interfered with various courts' administration of the Nursing Home cases, and severely injured THMI in the process. *Id.* ¶¶ 45-46.

> On April 28, 2010, in each of the Nursing Home Cases, Anderson sent an email to THMI's attorneys in Florida directing them to cease any defense of their respective cases and to withdraw as counsel for both THMI and THI. *Id.* ¶ 48.

> Zack and Anderson's control of the defense of THMI in the Nursing Home Cases was not merely providing assistance to a member of The Florida Bar, but was instead the direct provision of legal services in Florida. *Id.* ¶ 78.

> By controlling, directing, and participating in THMI's defense and representing themselves in Florida as counsel for THMI, Zack and Anderson construed and interpreted the legal effect of Florida law and statutes on behalf of THMI, and made decisions on behalf of THMI that required legal skill and a knowledge of the law greater than that possessed by the average citizen. *Id.* 79.

> The Defendants engaged in the unauthorized practice of law in Florida in violation of decisions by the Florida Supreme Court, by among other things,

preparing or assisting in the preparation of legal documents for THMI, corresponding with opposing parties or the attorneys of opposing parties as the representatives of THMI, and by holding a licensed Florida attorney out to the public as THMI's counsel, when, in fact, Defendants were controlling, orchestrating and conducting the defense of THMI.  *Id.* ¶ 92.

As counsel for FAS' customers, Zack has traveled to Florida in order to attend mediations and monitor jury trials in Florida.  Zack was physically present in Florida at the outset of trial in the *Nunziata* case, and attempted to solicit the services of a local attorney to represent THMI.  Zack has traveled to Florida to personally retrieve litigation files pertaining to the defense of THMI.  *Id.* ¶ 94.

In the Nursing Home cases, Anderson personally supervised, directed and controlled the employment and activities of Florida lawyers, including supervising, directing and controlling the actions taken by Florida lawyers in Florida courts.  Anderson personally instructed Florida defense counsel to file particular pleadings in the Nursing Home cases, to cease their defense of THMI in the Nursing Home Cases, and to wrongfully and/or unlawfully conceal a pending claims bar date.  Anderson answered discovery requests purportedly on behalf of THMI knowing such discovery would be filed with the Florida courts.  *Id.* ¶ 96.

Upon local counsel's withdrawal in *Jackson*, Anderson was personally identified by the Pinellas County Circuit Court as the representative to receive orders, filings and other documents on behalf of THI and THMI.  *Id.* ¶ 97.

Defendants again move to dismiss the amended complaint based on the Plaintiffs' failure to allege facts to support personal jurisdiction under Fla. Stat. § 48.193(1)(b) and for failure to state a cause of action under Rule 12(b)(6).  Plaintiffs respond that they have sufficiently alleged a cause of action for the unauthorized practice of law.  The Court disagrees.  Accordingly, the motions to dismiss should be granted.

## <u>PERSONAL JURISDICTION STANDARD OF REVIEW</u>

A federal court sitting in diversity may properly exercise personal jurisdiction over a defendant only if the plaintiff meets the requirements of the state long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 (11th Cir. 1999); *Venetian Salami Co. v. Parthenais,* 554 So. 2d 499, 502 (Fla.1989). Thus, a plaintiff must show defendant's activities and contacts in Florida satisfy Florida's long-arm statute to obtain personal jurisdiction. "If the plaintiff satisfies this requirement, a defendant who wishes to challenge personal jurisdiction must provide admissible evidence that refutes the essential jurisdictional facts set forth in the plaintiff's complaint." *Kitroser v. Hurt*, 85 So. 3d 1084, 1087 (Fla. 2012). "If a defendant fully refutes the jurisdictional allegations, then the burden shifts back to the plaintiff to prove the basis for jurisdiction." *Id.*

If the Court concludes that personal jurisdiction exists under Florida's long-arm statute, it must next consider whether defendant's contacts with the state of Florida are sufficient to satisfy the Due Process Clause of the Fourteenth Amendment. *Venetian Salami Co.,* 554 So. 2d at 501. The due process inquiry requires the Court to determine whether a defendant has minimum contacts with the forum state and whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295-96 (11th Cir. 2009).

## DISCUSSION

### I.   Florida Statute § 48.193(1)(b) Tortious Act

Florida Statute § 48.193(1)(b) provides that a defendant, "whether or not a citizen or resident of this state," is subject to the jurisdiction of Florida courts for any cause of action arising from "committing a tortious act within this state." Florida courts construing this provision have noted that the alleged tortfeasor's physical presence in Florida is not required. *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002). Rather, a tortious act "can occur through telephonic, electronic, or written communications into Florida" as long as the cause of action arises from the communications directed into the state. *Id.*

The Eleventh Circuit has held that "[i]n our technologically sophisticated world permitting interstate business transactions by mail, wire, and satellite signals, physical presence by the nonresident defendant is not necessary for personal jurisdiction in the forum state." *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 857 (11th Cir. 1990) (citing *Burger King,* 471 U.S. at 476). *See generally Brennan v. Roman Catholic Diocese of Syracuse New York,* 2009 WL 941765 (11th Cir. April 9, 2009)[5] (vacating district court's dismissal for lack of personal jurisdiction where plaintiff suffered injury in Florida arising from defendant's alleged intentional misconduct in New York and its fraudulent representations directed to him in Florida); *Horizon Aggressive Growth, L.P.,*

---

[5] Unpublished opinions are not binding precedent in the court; however they may be cited as persuasive authority. *See* 11th Cir. R. 36-2.

421 F.3d at 1168 (11th Cir. 2005) (reversing district court's dismissal for lack of personal jurisdiction under Florida's long-arm statute where complaint alleged defendant's communications from California to plaintiff in Florida intended to deceive and defraud plaintiff); *Acquardo v. Bergeron,* 851 So. 2d 665, 671 (Fla. 2003) (finding jurisdiction under Fla. Stat. § 48.193(1)(b) where an out-of-state defendant allegedly defamed a Florida resident during a single phone call made into Florida).

However, even if out-of-state communications can support the basis for a tort committed within Florida, the complaint must state a cause of action for which relief can be granted. *See Russo v. Fink*, 87 So. 3d 815, 818-19 (Fla. 4th DCA 2012) (finding that defendant was not within reach of long-arm statute because plaintiff failed to allege sufficient facts in complaint to state cause of action for tortious acts in Florida); *Silver v. Levinson*, 648 So. 2d 240, 241 (Fla. 4th DCA 1995) (stating that "because the threshold question of personal jurisdiction turns on whether defendant committed an intentional tort in Florida, we must also necessarily review the complaint to determine whether it states a cause of action"). Accepting the allegations as true, a court must first determine whether a cause of action has properly been pled before it can find Florida's tortious act prong of the long-arm statute satisfied.

a.      ***Goldberg v. Merrill Lynch Credit Corporation***

In 2010, the Florida Supreme Court interpreted Rule 10-7.1(d)(3) of the Rules Regulating the Florida Bar as permitting a party to bring a private civil action against an

unlicensed practitioner to recover fees and damages.[6] *Goldberg v. Merrill Lynch Credit Corp.*, 35 So. 3d 905, 907 (Fla. 2010).  Specifically, the Florida Supreme Court made two important rulings: (1) " [parties] have standing to seek restitution of any claimed damages and are not jurisdictionally barred from initiating a civil action for recovery of any damages caused by the unlicensed practice of law;"[7] and (2) "[t]o state a cause of action for damages under any legal theory that arises from the unauthorized practice of law, we hold that the pleading must state that this Court has ruled that the specified conduct at issue constitutes the unauthorized practice of law." *Id.*  This latter element, pleading a prior ruling by the Florida Supreme Court that states the alleged conduct constitutes the unauthorized practice of law, does not require that the accused defendant has already been subject to a Florida Bar proceeding. *Id.* at 908.  Rather, it eliminates a cause of action premised on conduct that is an issue of first impression before the Florida Supreme Court. *Id.*

The Court highlights the specificity of the Florida Supreme Court's language: "a cause of action for damages under any *legal theory* that *arises* from the unauthorized practice of law." (emphasis added).  This is not the creation of an entirely novel tort of the unauthorized practice of law; rather, the unauthorized practice of law is a foundational prerequisite to

---

[6]Rule 10-7.1(d)(3) states in pertinent part: "Nothing in this section shall preclude an individual from seeking redress through civil proceedings to recover fees or other damages."

[7]Zack argues this language mandates that only restitution claims may be brought under *Goldberg*'s theory and that Florida's long-arm statute does not include claims sounding in restitution.  However, a clear reading of the case does not support this assertion.  The Florida Supreme Court repeatedly stated a party may bring a cause of action for damages and there is no language implying those damages are limited to restitution claims.

bringing another tort arising from the same facts. *Id.* at 906 (discussing that petitioners brought claims for unjust enrichment and for money had and received based on the same activity which was the unauthorized practice of law). Here, Plaintiffs fail to mention another tort (and Defendants do not object to that failure), although the Court assumes they intended to allege legal malpractice.[8]

## b.    Florida Supreme Court Cases

In an attempt to find *one* similar case, Plaintiffs littered their amended complaint with citations to *ten* cases. The standard is high though: "the *specified conduct* at issue" must have been held to be the unauthorized practice of law by the Florida Supreme Court. *Goldberg*, 35 So. 3d at 907 (emphasis added). It should be obvious that a claim premised upon the unauthorized practice of law in Florida must allege actions taken by defendants *in Florida*.[9] Plaintiffs' inability to identify a single, factually analogous case proves the demise of their claim. The Court will now analyze and distinguish each of the ten cases from the alleged facts in the amended complaint.

---

[8]A keycite of *Goldberg. v. Merrill Lynch* reveals that no court has relied upon it for finding a sufficiently pled private right of action based on the unauthorized practice of law. Only two cases even cite to it: *In re Harris*, 458 B.R. 591, 596 (Bkr. N.D. Fla. 2011) (holding that the Florida Supreme Court had not ruled that the alleged conduct constitutes the unauthorized practice of law), and *Morningstar Holding Corp. v. G2, LLC*, 2012 WL 287517, at *9 (D. Idaho Jan. 31, 2012) (holding same). Accordingly, there is no precedent, either binding or persuasive, for this Court to rely upon in its determination that the unauthorized practice of law is an independent tort.

[9]The Court's order dismissing the original complaint cites Rule 4-5.5(b) of the Rules Regulating the Florida Bar that sets forth the generally prohibited conduct constituting the unlicensed practice of law in Florida. *See* Dkt. 44. Besides holding out to the public, all other prohibited activities require action undertaken *in Florida*.

**i.**     ***The Florida Bar v. Town*, 174 So. 2d 395 (Fla. 1965)**

In *Town*, an accountant held himself out to be "a specialist in the incorporation of businesses" and offered to handle the details of corporate formation.  174 So. 2d 395, 396. The Florida Supreme Court held that "the preparation of charters, bylaws and other documents necessary to the establishment of a corporation, being the basis of important contractual and legal obligations, comes within the definition of the practice of law."  *Id.* at 397.  Accordingly, respondent was permanently enjoined "from forming corporations for others, including the preparation of charters, bylaws, resolutions, and other documents incidental to the contractual rights of the corporation, its incorporators, and stockholders." *Id.*

Plaintiffs cite to *Town* for the general proposition that "[t]he practice of law is defined to include the giving of legal advice and counsel to others as to their rights and obligations under the law even if such matters may not then or ever be the subject of proceedings in a court."  Dkt. 59 at 23.  This broad definition, although mentioned as a foundation for why Town's activities were not allowed, clearly fails to meet the Florida Supreme Court's admonition that the case cited must have held "that the specified conduct at issue constitutes the unauthorized practice of law."  *Goldberg*, 35 So. 3d at 907.  There are no allegations that Zack or Anderson drafted any corporate documents establishing a corporation in Florida, much less the establishment of THMI.

ii.     *Tannenbaum v. Gerstein*, 267 So. 2d 824 (Fla. 1972)

In *Tannenbaum*, petitioner was under suspension when he admittedly prepared contracts, drew up corporate minutes, and advised corporation's executives. 267 So. 2d 824, 826. The Florida Supreme Court affirmed the Circuit Court of Dade County in disbarring petitioner because it found that, "with [petitioner's] corporate background and twenty years' experience as a practicing attorney in this state, [he was] by his own admission in control of a corporation's legal affairs." *Id.* Like *Town*, Plaintiffs cite to *Tannenbaum* for the general proposition that "the practice of law is not limited to litigation in the courts, but includes the giving of legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are defined or secured, regardless of whether or not such matters are or may be the subject of litigation." *Id.* at 826-27. Again, the specific conduct of contract drafting is not at issue in this case, and *Tannenbaum* fails to support Plaintiffs' cause of action for the unauthorized practice of law.

iii.    *The Florida Bar v. Gordon*, 661 So. 2d 295 (Fla. 1995) and *The Florida Bar v. Warren*, 655 So. 2d 1131 (Fla. 1995)[10]

Craig Warren, d/b/a Craig D. Warren and Associates, P.A., was an unlicensed person who purported to represent various persons in litigation, collected fees from such persons

---

[10]In their response, Plaintiffs note that these first four mentioned cases "are not provided to the Court as the precedent required by *Goldberg v. Merrill Lynch Credit Corp.*, 35 So. 3d 905 (Fla. 2010). Instead, these cases are cited to establish that the practice of law in Florida is much broader than the specific activities described in Rule 4-5.5(b) of the Rules Regulating the Florida Bar." Dkt. 59 at 23 n.17. Although that may be true, the argument that these cases can support the finding that Defendants engaged in the unauthorized practice of law are appropriately addressed to the Florida Supreme Court, which must decide all instances of first impression.

under the guise of being a lawyer, and failed to perform the promised services. 655 So. 2d 1131, 1132. Farrell Gordon engaged in the exact same activities, except he did not have a fictitious law firm. 661 So. 2d 295, 295. The Florida Supreme Court held this was the unlicensed practice of law and enjoined Warren and Gordon from doing numerous activities, including: advising persons of their rights and duties under Florida or federal law; giving advice and making decisions on behalf of others that requires legal skill; explaining legal remedies and possible courses of action to individuals that affect their procedural and substantive legal rights, duties, and privileges; corresponding with parties or attorneys of parties as the representative of a client relative to legal matters; and preparing pleadings and other legal documents for third parties. *Warren*, 655 So. 2d at 1132-33; *Gordon*, 661 So. 2d at 296.

Plaintiffs incorrectly rely upon the list of prohibitions as a definition of what constitutes the unauthorized practice of law. There are no allegations in the amended complaint that FAS, either through Zack or Anderson, advertised as a law firm, represented THMI in litigation, held themselves out to opposing counsel as THMI's legal counsel (not merely representatives in a corporate capacity), collected fees under the guise of being lawyers, or failed to perform promised legal services. The factual differences are self-explanatory.

Moreover, Plaintiffs' conclusory allegations that Defendants represented THMI in the nursing home cases fails to meet basic pleading requirements. Legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). On the contrary,

legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Here, Plaintiffs fail to explain *in what capacity* Defendants represented THMI to opposing counsel, *in what court* they represented THMI, or *on what pleading* they represented THMI. Without more, these allegations are too conclusory in nature to establish a claim based on the unauthorized practice of law.

### iv. *The Florida Bar v. Consolidated Business & Legal Forms, Inc.*, 386 So. 2d 797 (Fla. 1980)[11]

In *Consolidated Business & Legal Forms, Inc.*, 386 So. 2d 797 (Fla. 1980) (per curiam), the Florida Supreme Court held that a Florida corporation which was "engaged in the business of offering legal services through members of The Florida Bar who [we]re its full time employees" was engaged in the unauthorized practice of law because the officers and stockholders, who were non-lawyers, controlled the corporation and their sole purpose was personal financial gain. *Id.* at 798. The Florida Supreme Court made several important observations. First, this corporation "differs from businesses who maintain lawyers as full time employees primarily to further a course of business other than the practice of law." *Id.* Second, the non-lawyer officers controlled the lawyer employees to such a degree as to encourage "a high volume turnover of clients in order to increase his income" by

---

[11]The Court already discussed this case in its order dismissing the original complaint. Because Plaintiffs included new allegations directed at meeting the standard set in *Consolidated Business*, the Court will address it again here.

"maintaining cost efficiency and profit." *Id.* Third, if the corporation ceased to provide legal services, "then it would cease to exist as an income producing enterprise."

The differences between the structure and practice of FAS and Consolidated Business are glaring. FAS is not a Florida corporation nor are Zack and Anderson licensed to practice in Florida. Unlike Consolidated Business, FAS does not maintain any offices in Florida. *Id.* at 799. FAS retains Zack and Anderson primarily to further their business of "administrative back office support" to medical facilities. There are no allegations that FAS encourages Zack or Anderson to have a "high volume turnover of clients in order to increase [its] income." And FAS certainly would continue to exist in the absence of the alleged advising and directing of THMI's defense in the Florida litigation.

In the original complaint, Plaintiffs alleged that FAS' purpose was to provide a range of "administrative back office support services to long-term care companies, providers, skilled nursing facilities, long-term acute care hospitals, outpatient therapy care clinics, and hospices," not legal services. Now, in an effort to conform to *Consolidated Business*, Plaintiffs allege that "[a]mong other services, FAS, by and through its legal and risk management departments, performs legal services for third parties in exchange for a fee." Dkt. 46, Am. Compl. ¶ 8. Plaintiffs also allege that "[i]n Florida, FAS sufficiently held itself out to the public as a provider of legal services for the Florida public, such that FAS has been hired by Samaritan Care Hospice of Osceola, Inc., an Orlando-based company that is registered to conduct and actively conducts business in Florida." *Id.* ¶ 9.

These new allegations are insufficient to bring FAS within the purview of *Consolidated Business*. Not only does FAS still exist to provide mostly non-legal services, Plaintiffs allegations are once again conclusory at best. *How* does FAS "hold itself out to the public as a provider of legal services"? This legal conclusion must be supported with factual allegations. The amended complaint does not address how FAS advertised to Samaritan. Rather, that relationship likely arose because Samaritan is a related entity to FAS, which Plaintiffs recognize in their response. Lastly, FAS' services for Samaritan are irrelevant to its purported "legal services" to THMI in the wrongful death actions, and thereby cannot support a cause of action premised upon it.

Thus, *Consolidated Business* does not set forth an applicable precedent as to satisfy the Florida Supreme Court's pleading requirement to state a cause of action for the unauthorized practice of law.

v. ***The Florida Bar v. Glueck*, 985 So. 2d 1052 (Fla. 2008) and *The Florida Bar v. Hunt*, 429 So. 2d 1201 (Fla. 1983)**

*Glueck* primarily addressed when an improper partnership exists between a consulting company and an attorney. The Florida Bar found that Glueck had violated the Rule of Professional Conduct 4-5.4(c), which states: "A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law." 985 So. 2d 1052, 1056. An improper business relationship, although a reason for discipline by the

Florida Bar, is not the equivalent of the unauthorized practice of law.  Thus, that part of *Glueck* is irrelevant to the instant case.[12]

In *Glueck*, the Florida Supreme Court did find that Glueck assisted a nonlawyer in the improper provision of legal services, namely the selection of legal forms to be completed for clients.  *Id.* at 1057.  Unfortunately for Plaintiffs, the amended complaint does not allege that Zack or Anderson selected and completed legal forms on behalf of THMI for Florida litigation.  In this regard, it is inapposite.

*Hunt* also discusses the improper formation of a professional association where nonlawyers were corporate officers and directors, amidst a host of other violations equally inconsequential to the instant case.  429 So. 2d 1201.  The Plaintiffs cite *Hunt* for the "settled position that a corporation is prohibited from practicing law and cannot do so indirectly by employing lawyers to practice for it."  Dkt. 59 at 28 n.18.

The only relevant holding relates to Hunt's supervision of a disbarred attorney, Paul C. Mueller, who he permitted to prepare pleadings and to have direct contact with clients in two specific cases.  429 So. 2d at 1204.  Plaintiffs allege that Defendants "prepar[ed] or assist[ed] in the preparation of legal documents for THMI."  Dkt. 46, Am. Compl. ¶ 92. First, *assisting* in preparing pleadings is not what the Florida Supreme Court held was the unlicensed practice of law.  Second, the amended complaint does not identify what legal

---

[12]Plaintiffs appear to cite *Glueck* purely for its proposition related to the improper formation of a partnership with a nonlawyer.

documents Zack or Anderson prepared nor does it allege that they did so independent of the Quintairos Firm.

Lastly, the Plaintiffs fail to allege facts that would permit a reasonable inference that their direct communications with THMI gave it the impression that an attorney-client relationship had been formed and that FAS was acting as THMI's legal counsel in the wrongful death cases.  Unquestionably, FAS directly communicated with THMI because of their business relationship to provide administrative services.    However, direct communication with a client is alone insufficient to render it the unauthorized practice of law.  *Hunt* simply does not show the mirror "specified conduct" required by *Goldberg*.

vi.    ***The Florida Bar v. We The People Forms & Services Center of Sarasota, Inc.*, 883 So. 2d 1280 (Fla. 2004)**

We The People Forms and Services Center of Sarasota, Inc., and Danielle Kingsley were not members of the Florida Bar, but had advertised to the public that they could complete legal forms, directly met with and provided legal advice to clients, and contacted opposing parties and the attorneys for opposing parties on behalf of clients in reference to legal matters.  883 So. 2d 1280, 1281.  The referee identified by name at least eight cases in which they had improperly done so.  Based on these activities, the Florida Supreme Court found they had engaged in the unauthorized practice of law by:

> (1) providing customers with legal assistance in the selection, preparation, and completion of legal forms; (2) correcting customers' errors or omissions; (3) preparing or assisting in the preparation of pleadings and other legal documents for their customers; (4) corresponding with opposing parties or the attorneys of opposing parties as the representative of a customer in a legal

matter; (5) hiring a licensed Florida attorney to provide legal advice to respondents' customers; (6) holding a licensed Florida attorney out to their customers as respondents' supervising attorney; and (7) advertising their services in such a way that led the public to believe that respondents were capable of providing legal services.

*Id.* at 1281-82.

Plaintiffs latch onto the above description and summarily allege it against Defendants in the amended complaint. *See* Am. Compl. ¶ 92. However, several key differences distinguish it from the instant case. First, it is never alleged that Defendants selected or completed legal forms on behalf of THMI. Second, We The People hired an attorney, Robert Norgard, to provide legal services to their clients yet held him out to be their supervising attorney while they performed legal services. That authority structure is absent between FAS and the Quintairos Firm. There are no allegations that FAS hired the Quintairos Firm on its behalf in order to assist in FAS' provision of legal services to THMI. The Quintairos Firm was hired by THMI to be its legal counsel in the wrongful death actions, even if FAS, in its capacity as a provider of administrative services, selected the law firm to be hired by THMI. More important, there are no allegations that THMI believed FAS was its legal representative in the wrongful death actions or that Zack or Anderson told opposing counsel they were THMI's attorneys in those cases.

Finally, Plaintiffs' allegations fail to identify what legal documents Zack or Anderson prepared for THMI or who they corresponded with as the representatives of THMI. The amended complaint admits they did not appear as counsel of record before any Florida court.

Legal conclusions are inadequate to state a cause of action.   Accordingly, the factual

similarities run short yet again.

**vii.**   *The Florida Bar v. Neiman*, **816 So. 2d 587 (Fla. 2002) and** *The Florida Bar v.*

   *Dale*, **496 So. 2d 813 (Fla. 1986)**

In *Neiman*, a convicted felon acted as an attorney for over seven years.   The Florida

Supreme Court found Neiman to have been engaged in the unauthorized practice of law by:

> serving as a primary contact for conferences on legal disputes; holding himself
> out as an attorney in dealings with others; attempting to argue and advocate the
> merits of cases, the applicability of the law, evidentiary issues, liability issues,
> discovery matters, and settlement matters with opposing counsel; attempting
> to analyze statutory and case law and to discuss it with clients and opposing
> counsel; trying to advise clients on the strengths and weaknesses of their cases
> and on how to proceed; actively participating in and presenting clients' cases
> at mediation sessions; actively participating in and presenting the
> complainants' cases at settlement sessions; extensively involving himself with
> fee arrangements; attempting to advise clients of their obligations under legal
> documents; drafting detailed letters and legal documents; signing court-filed
> documents; and discussing legal documents with clients without any attorney
> present.

816 So. 2d 587, 588.

Plaintiffs allege that Defendants, through their direction of Florida counsel and control

of the defense of THMI and THI, were the primary contact in Florida (not local counsel) on

behalf of THMI in the nursing home cases for conferences on legal disputes and that

defendants communicated with opposing parties as the purported representatives of THMI,

argued and advocated the merits of the cases, evidentiary issues, and discovery matters.   As

before, these conclusions are not supported with factual allegations.   Plaintiffs do not deny

that the Quintairos Firm was at all times counsel of record.   Instead, they make the creative

argument that "[t]he extent of the Defendants' control over the services provided by local Florida counsel rendered the Defendants the actual providers of the legal services on behalf of THMI in Florida, regardless of the lack of official appearance in the Nursing Home Cases." Dkt. 46, Am. Compl. ¶ 77.  There are no allegations that the Defendants signed any court-filed documents, participated or presented THMI's case at mediation or settlement sessions, involved themselves in the fee arrangement between THMI and the Quintairos Firm, or drafted letters on behalf of THMI.  Clearly, this is not the same conduct found in *Neiman*.

In *Dale*, the Florida Supreme Court enjoined a Mississippi attorney from the unauthorized practice of law in Florida because he "affirmatively represent[ed] that he was able and willing to render legal assistance and counsel" in Florida to Florida clients. Specifically, Dale told his client that he would write the title insurance and act as closing agent in the purchase of property in Pensacola, Florida, and then proceeded to represent his client in the business negotiations for such property.

*Dale* is markedly different from what the amended complaint alleges against the Defendants.  Nothing in the amended complaint sets forth *facts* from which a court could conclude that Zack and Anderson affirmatively represented that they were able and willing to render legal assistance in Florida to THMI.  Assuredly, the amended complaint states legal conclusions that they *did* affirmatively represent to others that they could render legal assistance in Florida, although it fails to allege those representations were made to THMI, the only relevant party to this claim for the unauthorized practice of law.  Notably absent are

*factual allegations*, such as Dale's representation to act as a closing agent for a land purchase in Florida.

The complaint states that Defendants "directed" and "controlled" THMI's defense, but it fails to state how they did that or to whom they communicated these authoritative instructions. Presumably, the direction was given to THMI's local counsel, the Quintairos Firm. But that fact, a communication to a law firm on behalf of their client, is not what the Florida Supreme Court found to be the unauthorized practice of law in *Dale*.

Plaintiffs' fatal flaw with all of the ten cases is that none include the "specified conduct" required by the Florida Supreme Court.

## 2.      Conclusion

As in the Court's order dismissing the original complaint, the Court concludes that jurisdiction does not exist under the Florida long-arm statute. The Court need not address whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment. Additionally, since the Court lacks personal jurisdiction over the Defendants, it is barred from addressing the remaining claims related to Fed. R. Civ. P. 12(b)(6). *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action."); *see Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962) ("It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss.").

In *Goldberg v. Merrill Lynch Credit Corp.*, the Florida Supreme Court advised that the proper procedure for an action of first impression premised on the unauthorized practice of law is either to stay or dismiss the case without prejudice while the plaintiffs seek a determination pursuant to the advisory opinion procedures of the Rules Regulating the Florida Bar.  35 So. 3d at 907.  Consequently, this case is dismissed without prejudice and Plaintiffs may commence such proceedings with sixty days.  If Plaintiffs fail to initiate such proceedings within sixty days, dismissal shall be with prejudice.

It is therefore ORDERED AND ADJUDGED that:

1.  Motion to Dismiss on Behalf of Defendant Fundamental Administrative Services, LLC (Dkt. 49) and Motion of Defendant, Christine Zack, to Dismiss Amended Complaint (Dkt. 50) is GRANTED.

2.  Defendant Fundamental Administrative Services, LLC's Motion to Strike Portions of Plaintiffs' Opposition (Dkt. 64) and Motion of Defendant, Christine Zack, to Strike Portions of Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss Amended Complaint (Dkt. 65) are DENIED as moot.

3.  Per the Florida Supreme Court's opinion in *Goldberg v. Merrill Lynch Credit Corp.*, this case is dismissed without prejudice.  Plaintiffs may seek a determination from the Florida Supreme Court pursuant to the advisory opinion procedures of the Rules Regulating the Florida Bar within sixty (60) days from the date of this Order.  If Plaintiffs fail to initiate the process for

seeking such an advisory opinion within sixty (60) days, dismissal shall be with prejudice.

4.       The Clerk is directed to close this case and deny any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on July 30, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2012\12-cv-1855.finalordermtdismiss.frm